BRECHT v HENDRY

Docket No. 308343. Submitted July 17, 2012, at Detroit. Decided July 24, 2012. Approved for publication September 11, 2012, at 9:00 a.m.

Melissa D. Brecht had a child with Lee Allen Hendry, II, in November 2007. The Tuscola Circuit Court, Family Division, W. Wallace Kent, J., granted Brecht sole legal and physical custody of the child in September 2009 and awarded Hendry parenting time. The custody order provided, as required by MCR 3.211(C)(1) and (3), that the child's domicile could not be removed from Michigan without court approval and that neither parent could change the child's legal residence except in compliance with MCL 722.31. Nevertheless, Brecht later moved to North Dakota with the child without obtaining court approval. In June 2011, Hendry moved for Brecht to show cause and for a change to the custody and parenting-time order. After a hearing, the court, Amanda L. Roggenbuck, J., ordered Brecht to return the child to Michigan. Brecht then moved for permission to change the child's domicile to North Dakota on the basis of the factors set forth in MCL 722.31(4), which the Legislature had adapted from *D'Onofrio v D'Onofrio*, 144 NJ Super 200 (1976). After considering these factors, the court issued an order denying the motion. Brecht moved for relief from this order under MCR 2.612(C)(1), arguing that, because she had sole custody of the child, the court had erred by considering the factors in MCL 722.31(4) and was required to approve her request. The court denied the motion, ruling that it was in the child's best interests not to leave Michigan. The court denied Brecht's motion for reconsideration, and Brecht appealed.

The Court of Appeals *held*:

1. The requirements set forth in MCL 722.31(1) do not apply to a parent who moves for permission to change the legal residence of a child if the parent has sole custody, and the court may not consider the factors set forth in *D'Onofrio* or in MCL 722.31(4) when exercising its discretion under MCR 3.211(C)(1) to grant or deny that parent's request. The General Court Rules, which were adopted in 1963, contained a rule mandating that every judgment involving child custody contain a provision requiring parents to obtain the court's permission before moving the child's domicile

out of Michigan. The Court of Appeals construed this rule, which is now MCR 3.211(C)(1), to apply to both sole and joint custody orders and to require that trial courts consider the *D'Onofrio* factors before making their decision. These factors include consideration of the prospective advantages of the move, the custodial parent's motives in seeking the move, the noncustodial parent's motives in resisting the move, and the existence of a realistic opportunity for visitation if the move is allowed. The common law developed under MCR 3.211(C)(1) remained the sole law applicable to requests for a change in domicile until the Legislature enacted 2000 PA 422, codified at MCL 722.31, which provided that a parent who had joint legal custody could not change the child's legal residence by more than 100 miles without permission from the court or the other parent and that, when considering a motion for permission to change a child's legal residence, the court must consider a series of factors that were derived from the *D'Onofrio* factors. Because MCL 722.31 and MCR 3.211(C)(1) can be construed harmoniously, the Court of Appeals panel in this case would have concluded that courts must fully comply with both. However, because previous panels had held that the Legislature's decision to exempt parents with sole legal custody from the requirements of MCL 722.31 not only eliminated the court's common-law duty to consider the *D'Onofrio* factors under either MCL 722.31 or under MCR 3.211(C)(1) but also rendered it error for a court to consider the *D'Onofrio* factors as codified in MCL 722.31(4) if MCL 722.31 did not apply, whether and to what extent MCR 3.211(C)(1) has any continuing validity was for the Supreme Court to determine.

2. The trial court erred to the extent it determined that MCL 722.31 applied to Brecht's request to move because MCL 722.31 does not apply to orders granting sole legal custody. Although the court still had to determine whether Brecht should be permitted to move the child out of the state under MCR 3.211(C)(1), the court could not consider the *D'Onofrio* factors in determining whether to grant the request. Once the court determined that MCL 722.31 did not apply, it should have granted Brecht's request as a matter of course.

Order vacated; case remanded for further proceedings.

1. PARENT AND CHILD — CHILD CUSTODY — CHANGES OF CHILD'S DOMICILE OR RESIDENCE — PARENTS WITH SOLE LEGAL CUSTODY — 100-MILE RULE.

MCL 722.31, which prohibits the parent of a child whose custody is governed by court order from changing the child's legal residence to a location that is more than 100 miles from the child's legal

residence without the consent of the other parent or permission of
the court, does not apply to parents with sole legal custody.

2. PARENT AND CHILD — CHILD CUSTODY — CHANGES OF CHILD'S DOMICILE OR
RESIDENCE — PARENTS WITH SOLE LEGAL CUSTODY — REQUIREMENT OF
COURT APPROVAL TO CHANGE DOMICILE OR RESIDENCE FROM MICHIGAN.

A trial court considering the request of a parent with sole custody of
a minor to move the minor's domicile or residence from Michigan
pursuant to MCR 3.211(C)(1) may not consider the factors set
forth in *D'Onofrio v D'Onofrio*, 144 NJ Super 200 (1976), or the
codification of those factors in MCL 722.31(4); these factors
include consideration of the prospective advantages of the move,
the custodial parent's motives in seeking the move, the noncusto-
dial parent's motives in resisting the move, and the existence of a
realistic opportunity for visitation if the move is allowed; the trial
court must exercise its discretion to grant or deny the request
under MCR 3.211(C)(1) regardless of the fact that it is unclear how
that discretion is to be exercised.

*Neil C. Szabo* for the plaintiff.

*John P. Lozano* for the defendant.

Before: TALBOT, P.J., and SERVITTO and M. J. KELLY, JJ.

M. J. KELLY, J. Plaintiff, Melissa Danelle Brecht,
appeals by leave granted the trial court's order denying
her motion for permission to change the domicile of her
daughter with defendant Lee Allen Hendry, II. Because
we conclude that the trial court improperly applied the
law governing a motion to change domicile, we vacate
the trial court's order and remand for proceedings
consistent with this opinion.

I. BASIC FACTS

Brecht and Hendry had their daughter in November
2007. In September 2009, the trial court awarded
Brecht sole legal and physical custody of the child and
gave Hendry parenting time. However, the order also
provided that, at least 48 hours before exercising

parenting time, Hendry had to notify Brecht about his intent to exercise parenting time and had to provide Brecht with the address and telephone number for the location where he intended to exercise the parenting time. As required under MCR 3.211(C)(1) and (3), the custody order provided that the domicile of the minor child could not be removed from the state of Michigan without the court's approval and that a parent whose custody or parenting time was governed by the order could not change the child's legal residence unless the change complied with MCL 722.31.

In June 2011, Hendry asked the trial court to order Brecht to show cause and requested to change the custody and parenting time order after Brecht moved to North Dakota with their daughter without first obtaining the trial court's permission. After holding a hearing, the trial court entered an order requiring Brecht to return the child to Michigan.

Thereafter, Brecht moved for permission to change the child's domicile from Michigan to North Dakota. At the evidentiary hearing Brecht presented evidence on the factors enumerated under MCL 722.31(4) and argued that the trial court should grant her motion on that basis. After considering the factors, the trial court denied the motion for a change in domicile.

In October 2011, Brecht moved for relief from the order under MCR 2.612(C)(1)(a), (e), and (f). Specifically, she argued that the trial court erred when it considered the factors stated under MCL 722.31(4) because those factors do not apply when a parent with sole custody seeks to change the child's domicile. She further argued that, in cases where a parent has sole custody, the court is required to approve a request to change the child's domicile out of state after the parent presents proof that he or she has sole custody. The trial court disagreed:

I absolutely appreciate counsel's argument that the court has no option and no choice in sole custody cases. I disagree with that. I believe that the court is required to look at what is in the best interest of the child.

And at this point based on the facts that this court has been presented with over and over and over with this case, I do not believe it is in her best interests to leave the State of Michigan. I am not vacating my order. The order will stand.

After the trial court entered an order denying Brecht's motion for reconsideration, Brecht appealed.

## II. CHANGE OF DOMICILE

### A. STANDARD OF REVIEW

On appeal, Brecht argues that the trial court erred when it denied her motion to change domicile on the basis of the factors enumerated under MCL 722.31(4). Specifically, she argues that the trial court *cannot* consider those factors when analyzing her request because our Legislature provided that those factors do not apply in situations involving sole custody. This Court reviews de novo the proper interpretation and application of statutes and court rules. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). This Court also reviews de novo as a question of law the proper interpretation and application of the common law, such as the common law governing petitions for a change of domicile. See *Mich Citizens for Water Conservation v Nestlé Waters North America Inc*, 269 Mich App 25, 53, 83; 709 NW2d 174 (2005), rev'd in part on unrelated grounds 479 Mich 280 (2007).

### B. CUSTODY, DOMICILE, AND COURT SUPERVISION

#### 1. MCR 3.211(C)(1)

Michigan courts have the authority to resolve disputes concerning the custody of children, whether as an

original action or incidentally from another action.
See MCL 722.27(1). In such cases, the trial court
must "declare the child's inherent rights and estab-
lish the rights and duties as to the child's custody,
support, and parenting time in accordance with this
act." MCL 722.24(1). Moreover, after a Michigan
court has entered a judgment or order governing
child custody, the court retains jurisdiction over the
child and may modify its order or judgment until the
child reaches—at the latest—age 19 years and six
months. MCL 722.27(1)(c). Thus, Michigan courts
have a continuing interest in protecting the children
subject to custody orders and ensuring that the
parents continue to meet their obligations.

Until 1963, a parent could change a child's domicile
without the court's permission unless otherwise pro-
vided in the original judgment or order. However, in
1963, our Supreme Court adopted the General Court
Rules, which included a provision requiring every judg-
ment involving child custody to contain a requirement
that parents obtain the court's permission before mov-
ing the child's domicile out of this state. See GCR 1963,
729.4(1). Our Supreme Court adopted this rule in order
to ensure the efficient administration of our courts'
continuing jurisdiction over children subject to court
orders and to ensure that the Friend of the Court would
have notice and an opportunity to make recommenda-
tions consistent with its obligations. See committee
comments to GCR 1963, 727.2 (noting that courts may
have difficulty exercising their jurisdiction when a
parent moves the child from the state) and GCR 1963,
729.4 (noting that the purpose of GCR 1963, 729.4 was
to "facilitate continuing supervision over the child"),
reprinted in 4 Honigman & Hawkins, Mich Court Rules
Annotated (2d ed, 1967), pp 390-391, 429.

This Court determined that GCR 1963, 729.4—current MCR 3.211(C)(1)—gave trial courts the discretion to approve or deny a parent's request to move a child's domicile from this state. See *Lem v Lem,* 12 Mich App 174, 177; 162 NW2d 683 (1968) (reviewing the trial court's reasons for granting permission and determining that the decision was not an abuse of discretion). This Court did not at first provide the trial courts with any guidance for evaluating these requests; rather, the trial court could presumably premise its decision on any factors that it deemed relevant to the requested change and this Court would uphold those decisions as long as they did not amount to an abuse of discretion. See *id.* However, some panels of this Court instructed trial courts to consider the request in light of factors taken from the decision in *D'Onofrio v D'Onofrio,* 144 NJ Super 200; 365 A2d 27 (1976). See *Scott v Scott,* 124 Mich App 448, 452; 335 NW2d 68 (1983); *Henry v Henry,* 119 Mich App 319, 323; 326 NW2d 497 (1982); *Watters v Watters,* 112 Mich App 1, 12-13; 314 NW2d 778 (1981).

Under the so-called *D'Onofrio* factors, a trial court should consider the rights of the noncustodial parent as well as the rights of the custodial parent in determining whether to grant the requested change in domicile:

"(1) 'It should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children.

"(2) 'It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when she is no longer subject to the jurisdiction of the courts of this State.

"(3) 'It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations.

"(4) 'Finally, the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed.' " [*Henry*, 119 Mich App at 323-324, quoting *D'Onofrio*, 144 NJ Super at 206-207.]

Eventually this Court held that trial courts · *must* consider the *D'Onofrio* factors when resolving a parent's request to move the child's domicile outside this state. See *Overall v Overall*, 203 Mich App 450, 458; 512 NW2d 851 (1994). Further, this Court recognized that MCR 3.211(C)(1) applied to both sole and joint custody orders. See *Scott*, 124 Mich App at 452 (applying the *D'Onofrio* factors to a joint custody situation); *Henry*, 119 Mich App at 324 (applying the *D'Onofrio* factors to a sole custody situation). Accordingly, under the common law applicable to requests for a change in domicile under MCR 3.211(C)(1), a parent with sole or joint custody could not change the domicile of a child to a location outside this state without obtaining the trial court's permission and the trial court had to make its decision after considering the *D'Onofrio* factors, but that decision would not be disturbed on appeal absent an abuse of discretion.

### 2. THE 100-MILE RULE

The common law governing requests for a change of domicile under MCR 3.211(C)(1) remained the sole law applicable to requests for a change in domicile until the Legislature enacted 2000 PA 422. In its analysis of this

bill,[1] the Senate Fiscal Agency noted that MCR 3.211(C)(1) limited a parent's ability to relocate a child's residence outside Michigan, but left "movement within Michigan . . . unencumbered . . . ." Senate Legislative Analysis, SB 1244, January 22, 2001, p 1. It explained that this could lead to incongruous results: "[A] parent living in Monroe, Michigan, could be prevented from moving 15 miles or so to Toledo, Ohio, without court approval or consent from the other parent, but could move 620 miles to Ironwood, Michigan" without the court's approval or the consent of the other parent. *Id.* The agency stated that the bill's rationale was to address the belief that, "in situations in which parents have dual legal custody, both parents' homes should be designated as the child's legal residence, and changing the child's legal residence should be subject to a restriction based on a reasonable and consistent distance." *Id.* 2000 PA 422 became effective on January 9, 2001 and was codified at MCL 722.31.

The new law provided that a child whose custody "is governed by court order has . . . a legal residence with each parent" and that a parent cannot change the child's legal residence "to a location that is more than 100 miles from the child's legal residence . . . ." MCL 722.31(1). A parent could, however, change the child's residence to a location that was more than 100 miles from the current residence if the parent obtained permission from the court or the other parent. MCL 722.31(2). The Legislature further provided that, when considering a motion for permission to change a child's domicile, the court must consider a series of factors that were in part derived from the *D'Onofrio* factors. See

---

[1] We have cited the bill analysis for background purposes and not as an aid to determining the Legislature's intent. See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587 n 7; 624 NW2d 180 (2001).

MCL 722.31(4). Finally, the Legislature provided that this new section did not apply to orders that granted one parent sole legal custody—that is, MCL 722.31 only applied if the custody order provided for joint legal custody. MCL 722.31(2).

It is well settled that the common law remains in force until modified and that courts will not lightly presume a legislative intent to abrogate or modify the common law. *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010). Further, when the Legislature does exercise its right to modify the common law, it should speak in no uncertain terms. *Id.* Because MCL 722.31 and MCR 3.211(C)(1) can be construed harmoniously as complementary provisions, were we writing on a clean slate, we would conclude that trial courts must fully comply with both.[2] See *Dawe*, 485 Mich at 31-32 (noting that the statutory scheme at issue in that case was not so comprehensive that it suggested an intent to completely abrogate the common law and, for that reason, concluding that the common-law duties remained in addition to the new statutory duty). That is, we would conclude that, before a parent moves a child out of state, the parent must obtain the trial court's permission and the trial court must consider the *D'Onofrio* factors even if MCL 722.31 does not apply. Similarly, if MCR 3.211(C)(1) did not apply but MCL 722.31 did apply, the trial court would still have to conduct a hearing and consider the factors codified under MCL 722.31(4). But we are not writing on a clean slate.

---

[2] We note that MCR 3.211(C)(1) also implicates our Supreme Court's authority to promulgate rules affecting court administration. See *McDougall v Schanz*, 461 Mich 15, 30-31; 597 NW2d 148 (1999). As already noted, a court that has issued an order governing the custody of a child continues to have jurisdiction over that child, and its duty to act in that child's best interests might be impaired if the child is removed from the state.

After our Legislature enacted MCL 722.31, this Court addressed the continuing validity of the common-law rules applicable to a motion to change domicile under MCR 3.211(C)(1) in *Spires v Bergman*, 276 Mich App 432; 741 NW2d 523 (2007). In that case, the defendant argued that the trial court erred by failing to make findings of fact with regard to the plaintiff's request to change the minor child's domicile from Michigan to Texas and by failing to consider the *D'Onofrio* factors as required under the common law. *Id.* at 436. The Court in *Spires* disagreed and held that the Legislature's decision to codify the *D'Onofrio* factors altered the common law. *Id.* at 437-438. Specifically, the Court held that the Legislature's decision to exempt parents with sole legal custody from the requirements of MCL 722.31 effectively eliminated the trial court's duty to consider the *D'Onofrio* factors under either MCL 722.31 or under MCR 3.211(C)(1). *Id.* at 438-440. Thus, even though a parent must still seek the trial court's permission under MCR 3.211(C)(1) before moving a child subject to a custody order out of this state, if MCL 722.31 does not apply, the trial court has no obligation to consider the *D'Onofrio* factors. *Id.* at 439-440. After the decision in *Spires*, another panel of this Court held that it was error for a trial court to consider the *D'Onofrio* factors, as codified under MCL 722.31(4), when considering whether to grant a parent's request to move the child out of this state under MCR 3.211(C)(1) because MCL 722.31 did not apply. See *Brausch v Brausch*, 283 Mich App 339, 350, 352-353; 770 NW2d 77 (2009). Accordingly, under the decisions in *Spires* and *Brausch*, if a parent with sole legal custody wishes to move a child subject to a custody order out of this state, MCL 722.31 does not apply and the trial court may not consider the *D'Onofrio* factors.

Nevertheless, the trial court must still exercise its discretion to grant or deny the request. See *Brausch,* 283 Mich App at 350.

We acknowledge that, after the decisions in *Spires* and *Brausch,* it is unclear how trial courts might properly exercise the discretion called for under MCR 3.211(C)(1). Indeed, those decisions appear to have rendered MCR 3.211(C)(1) nugatory; if MCL 722.31 does not apply, the trial court may not consider the *D'Onofrio* factors and, accordingly, must approve the request without further ado, which seems to contradict the notion that trial courts have the discretion to grant or deny requests to move a child whose custody is subject to a court order out of this state. In any event, it is now a matter for our Supreme Court to determine whether and to what extent MCR 3.211(C)(1) should have any continuing validity.

## C. APPLICATION

The child at issue here was subject to a court order, but that order provided Brecht with sole legal custody. Accordingly, MCL 722.31 did not apply, see MCL 722.31(2), and the trial court was not required to consider the factors enumerated under MCL 722.31(4) in determining whether to grant the request. *Brausch,* 283 Mich App at 349-350; *Spires,* 276 Mich App at 438. Similarly, even though Brecht still had to obtain the court's permission before she could move the child out of state, because MCL 722.31 did not apply, the trial court could not make its determination in reliance on the *D'Onofrio* factors. *Brausch,* 283 Mich App at 350, 352-353. Rather, it had to grant her request as a matter of course. Therefore, the trial court erred when it determined that it was not in the child's interest to permit the move.

### III. CONCLUSION

The trial court erred to the extent that it determined that MCL 722.31 applied to Brecht's request to move. And, although the trial court still had to determine whether Brecht should be permitted to move the child outside this state, see MCR 3.211(C)(1), it could not consider the *D'Onofrio* factors in determining whether to grant the request. *Brausch*, 283 Mich App at 352-353. Moreover, once it determined that MCL 722.31 did not apply, it should have granted Brecht's request. *Brausch*, 283 Mich App at 350, 352-353; *Spires*, 276 Mich App at 439-440 (noting that once the trial court determined that MCL 722.31 did not apply, it properly approved the parent's request to move the child out of state). For that reason, we vacate the order denying Brecht's request and remand for further proceedings consistent with this opinion.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Brecht may tax her costs. MCR 7.219(A).

SERVITTO, J., concurred with M. J. KELLY, J.

TALBOT, P.J. (*concurring*). I concur in the result only.